IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE ESTATE OF CHRIS BROWN,
DENISE BROWN (individually and as
the personal representative of Brown's
estate), JOHN BROWN, SAMANTHA
BROWN and JACOB BROWN,

                              OPINION AND ORDER

              Plaintiffs,

                              07-cv-471-bbc

     v.

JENNIFER MEIERDIRK (in her
individual and official capacities),
SHAWN NOLAN (in his individual
and official capacities), WAYNE
HANSEN (in his individual and
official capacities), JOSH LUND (in
his individual and official capacities)
and ROCK COUNTY,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On December 17, 2005, while being detained at the Rock County Jail, Chris Brown committed suicide by hanging himself with a bed sheet. Plaintiffs Denise Brown (Chris's wife and personal representative of his estate) John Brown, Samantha Brown, Jacob Brown (Chris's minor children) and the Estate of Chris Brown filed this lawsuit under 42 U.S.C.

1

§ 1983 and state law, contending that defendant Rock County and defendants Jennifer Meierdirk, Shawn Nolan, Wayne Hansen and Josh Lund acted in their individual and official capacities with deliberate indifference and negligence toward Chris Brown's risk of suicide.  Jurisdiction is present.  28 U.S.C. §§ 1331 and 1367.

Currently before the court is defendants' motion for summary judgment.  Initially, I note that plaintiffs have agreed to dismissal of their claims against defendants Nolan and Meierdirk in their individual capacities, leaving defendants Hansen and Lund as the only defendants being sued in their individual capacities.   Because the undisputed facts establish that defendants Hansen and Lund were not deliberately indifferent to a substantial risk of serious harm, plaintiffs' remaining federal claims must be dismissed as well.  Claims against an officer in his official capacity are claims against the municipality.  If there has been no constitutional violation by an individual officer, the county may not be held liable.  The same conclusion holds true regarding plaintiffs' derivative claims for loss of association.  These claims necessarily rise and fall with the underlying constitutional claims.  Finally, in accordance with 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over plaintiffs' remaining state common law negligence claim.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed and relevant to the parties' dispute.

2

UNDISPUTED FACTS

A. <u>Parties</u>

At all times relevant to this lawsuit, Chris Brown was a resident of Rock County, Wisconsin. Plaintiff Denise Brown was his wife and plaintiffs John Brown, Samantha Brown and Jacob Brown were his children.

Defendants Jennifer Meierdirk and Shawn Nolan were employed by the Rock County Sheriff's Department as corrections officers and defendants Wayne Hansen and Josh Lund were employed by the Rock County Sheriff's Department as sergeants. Defendant Rock County is a municipal corporation organized according to and existing under the laws of the State of Wisconsin.

B. <u>December 14th to 15th, 2005</u>

On December 14, 2005, Janesville police arrested Chris Brown for an alleged second degree sexual assault. Defendant Meierdirk received Brown for booking at the Rock County jail. Officer Aaron Ellis provided defendant Meierdirk with a temporary detention form on which detective Mike Duerr had noted that Brown had told detective Martin Altstadt he had thought about shooting himself the day before (December 13, 2005). Altstadt stated in a written report that he overheard Brown's comment in a telephone conversation between Brown and his wife.

3

Defendant Meierdirk completed the booking pre-admission questions form with Brown. She noted on the form that Brown admitted to having made a suicide attempt 12 years earlier when he was having problems with his wife and that he had responded "no" when asked whether he was currently contemplating suicide. When defendant Meierdirk questioned Brown about the self-harming comment he had made on December 13, Brown responded that he had been "pissed off" and "just said it." Defendant Meierdirk placed the booking pre-admission questions form and the temporary detention form in Brown's file, without informing her supervisor that Brown had admitted to a past suicide attempt.

At a shift change, defendant Meierdirk told defendant Nolan that Brown was in the booking room and that he had attempted suicide 12 years ago but had stated that he was not currently contemplating suicide. Defendant Meierdirk did not inform defendant Nolan of Brown's December 13 comment about harming himself.

Defendant Nolan completed the remaining booking forms, which included the officer observations form, the suicide risk form and the medical observations form. He noted that Brown had attempted suicide once 12 years earlier but that Brown responded in the negative when asked whether he was currently contemplating suicide. Defendant Nolan completed the booking process by advising both the jail nurse and his supervisor, defendant Hansen, that Brown had previously attempted suicide but that Brown had stated that he was not currently considering suicide.

4

After being informed about Brown's past suicide attempt and learning about the seriousness of the criminal allegations against Brown, defendant Hansen decided to keep Brown in the booking room holding cell until morning, but did not put him on suicide watch. During the night, defendant Nolan reported on Brown to defendant Hansen, stating that Brown was okay and sleeping in the holding cell. At approximately 4:45 a.m. on December 15, Brown was assigned to cell A-2-2 with another inmate.

Before Sergeant Patrick Lalor assumed shift supervisor duties during the day on December 15, defendant Hansen told him that Brown had been kept in the booking room holding cell until Hansen was confident that Brown was suitable for general population. Sometime after defendant Hansen left the jail, Lalor reviewed Brown's file, which included the temporary detention form and Brown's December 13 comment about shooting himself. Lalor spoke with Brown, who said he had felt that his life was over on December 13 but that he no longer felt that way. Brown also told Lalor that he was not having any thoughts of self-harm. Brown declined any help and said that he would contact jail personnel if thoughts of self-harm returned.

When defendant Lund reported for duty on December 15, Lalor informed him that Brown had made a comment on December 13 about harming himself. Lalor said that the comment had given him concern but a conversation with Brown led him to believe that Brown was not in need of suicide watch, although he warranted monitoring. Defendant

5

Lund told second shift Officer Pohlman to keep a closer eye on Brown. Pohlman placed a sticky note that said "Watch closely, Brown, Christopher, A-2-2" on Brown's inmate card so that officers who came to work after Pohlman would know to monitor Brown.

### C. December 16th to 17th, 2005

At the end of his shift, defendant Lund gave defendant Hansen the information Lalor had obtained about Brown, along with Lalor's belief that Brown did not need to be placed on suicide watch. Hansen never saw the sticky note Pohlman had placed on Brown's inmate card.

Officer Goodwin worked in Unit A on December 16. He was informed by Officer Jason Brown to watch Brown closely because Brown had seemed shocked by his possible sentence when he learned of it earlier in the day. (The parties dispute whether, at the beginning of his shift, Goodwin was told by defendant Hansen to keep a close eye on Brown because he was at risk of harming himself.) Goodwin also saw the "Watch closely" sticky note on Brown's inmate card. During headcount at 10:50 p.m. on December 16, Goodwin observed Brown lying on his bed in cell A-2-2 with his eyes open. After Goodwin completed his headcount, he asked defendant Hansen whether anything extra should be done about checking on Brown; Hansen told him to follow normal procedure. Goodwin did not see Brown again until after midnight. At 12:02 a.m. on December 17, Officer Bosben found

6

Brown hanging by a bed sheet in his cell.

## OPINION

### A. Deliberate Indifference Claim

Under the Fourteenth Amendment a pre-trial detainee has a limited constitutional right to be protected from harm while in state or local custody. Cavalieri v. Shepard, 321 F.3d 616, 620 (7th Cir. 2003). (The standard under the Fourteenth Amendment is identical to that available to convicted inmates under the Eighth Amendment. Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000).) Determining whether this right has been violated requires determining whether defendants were deliberately indifferent to a substantial risk of serious harm. Cavalieri, 321 F.3d at 620 (citing Farmer v. Brennan, 511 U.S. 825 (1994)). Where suicide is concerned, the seriousness of the harm is obvious and the focus shifts to the subjective prong of the inquiry: deliberate indifference. To prove "deliberate indifference," plaintiffs must prove two elements: "(1) defendant[s] knew (not just should have known) of a "substantial risk" that [Brown] would seriously harm [him]self; and (2) defendant[s] disregarded that risk by failing to take reasonable measures to abate it." Estate of Hill v. Richards, 525 F. Supp. 2d 1076, 1084 (W.D. Wis. 2007) (citing Farmer, 511 U.S. at 828, 844). In deciding defendants' motion for summary judgment, "the question is not whether plaintiff has proven these elements as a matter of law, but whether

7

a reasonable jury could find in plaintiff[s]' favor." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

1. Defendants Hansen and Lund in their individual capacities

The undisputed facts show that defendants Hansen and Lund were aware that Brown posed some risk of suicide. The question is whether they knew that he posed a substantial risk of committing suicide. "In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006).

In support of their contention that defendants Hansen and Lund were aware that Brown presented a substantial risk of suicide, plaintiffs start with defendants' perception and cautious treatment of Brown as someone who might harm himself. This they say is evidence of defendants' knowledge of the seriousness of the risk. I disagree. Just because a person is concerned about a risk and takes precautions to avoid the risk does not mean that the person knows the substantiality of that risk, or its imminence. Taylor v. Wausau Underwriters Insurance Co., 423 F. Supp. 2d 882, 892 (E.D. Wis. 2006). An example provided by Judge Griesbach in Taylor, 423 F. Supp. 2d at 892, helps demonstrate the problem with such a "perception-equals-reality approach":

a city's mayor could place the city on red alert for a terrorism threat, but the actual

8

> risk might be either overstated or nonexistent; the fact that the city was sensitive to a risk does not mean the risk was real. The city could have been acting on bad or stale information, or it simply could have been overreacting to weak information. Regardless, it is clear that the higher sensitivity to the risk, on its own, says nothing about the underlying *veracity* of that risk.

(Emphasis in original). I would add that taking precautions says little about the individual defendants' knowledge of the particular risk. The Court of Appeals for the Seventh Circuit has held that cautious treatment, including "some level of suicide watch, even the highest level, does not demonstrate a subjective awareness of a substantial risk of imminent suicide." Collignon v. Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998).

One cannot find from defendant Lund's comment to keep a close eye on Brown that Lund was aware that Brown was a substantial suicide risk. It was a wise precaution because of Lund's knowledge of Brown's suicidal comment two days earlier and presumably adequate in light of Brown's denial of current thoughts of self-harm or need for help. At most Lund's directive to Officer Pohlman suggests that Lund perceived Brown to be *a* risk. The directive does not establish how serious Lund perceived the risk to be or how serious it actually was. To conclude otherwise would leave jails and correction officers no room for caution.

The same determination holds true for defendant Hansen's comments about Brown and his treatment of Brown. Plaintiffs note that defendant Hansen decided initially to keep Brown in the booking holding cell and that Hansen may have told Goodwin to keep a close eye on Brown. From this they argue that Hansen was aware that Brown posed a substantial

9

suicide risk. Even if I accept the second fact as true, defendant Hansen's precautions do not prove that Hansen was aware that Brown posed a substantial suicide risk. Stated another way, taking precautions such as placing someone on suicide watch does not indicate that the person is highly likely to attempt suicide. Colligon, 163 F.3d at 990. Nothing in the precautions that either defendant took establishes an awareness of a significant likelihood of an imminent suicide attempt. Even considered together, defendants' perceptions and precautions, such as keeping a close eye on Brown, do not provide sufficient evidence for a reasonable jury to conclude that Hansen and Lund were aware of a substantial risk of suicide.

Plaintiffs' second argument rests on several facts that they believe provide objective support for finding that the risk was obvious to defendants Hansen and Lund. The relevant facts are that Brown had attempted to commit suicide 12 years earlier, the serious nature of the crime charged against Brown and Brown's December 13 comment about wanting to shoot himself. Plaintiffs cite a decision of this court, Mombourquette v. Amundson, 469 F. Supp. 2d 624 (W.D. Wis. 2007), in support of their argument, contending that the facts in this case are analogous to those in Mombourquette.

In Mombourquette, the defendants were aware of two recent suicide attempts by the plaintiff. In light of those attempts, I determined that "when the defendants were aware of recent suicide attempts it would be improper to grant summary judgment." Id. at 638.

10

Plaintiffs note that defendants Hansen and Lund were aware that Brown had attempted to commit suicide 12 years earlier and that such awareness provides subjective knowledge that Brown posed a substantial risk of suicide.  A twelve-year-old suicide attempt is a far cry from two recent attempts.  Matos ex rel. Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003) (awareness of inmate's suicide attempt three years earlier no proof of intentional disregard of known risk).

It is true, as plaintiffs note, that defendants Hansen and Lund were aware that Brown had made a recent comment about harming himself, but one recent comment is not equivalent to a recent attempt, especially since Brown repudiated it as being made because he was "pissed off."  Collins, 462 F.3d at 761 (imminent threat posed by inmate's suicidal comment was substantially abated fifteen minutes later when inmate said he would be all right).  The core difference between defendants Hansen and Lund and the defendants in Mombourquette lies in their knowledge about each inmate's recent suicide attempts:  Ms. Mombourquette had made two; Brown had made none.

The result in Mombourquette did not turn on the plaintiff's recent suicide attempts but on a congeries of facts suggesting that the defendants were subjectively aware of her substantial risk of suicide.  The defendants knew that the plaintiff was on medication for depression and anxiety, that she had made *multiple* statements days earlier that she was thinking of killing herself and that she continued to face all the stressful factors that had led

11

to her previous acts of self-harm. The facts in Mombourquette bear little relation to the facts in this case.

Additionally, defendants Hansen and Lund were aware that on at least three occasions when Brown was questioned about being suicidal he responded that he was not contemplating suicide. This knowledge weighs against a finding that defendants were aware that Brown posed a substantial risk of suicide. An individual's self-reporting of his mental state may be of questionable value in determining whether an officer was aware of a substantial risk of suicide when certain facts are present, such as recent prior attempts of self-harm. Mombourquette, 469 F. Supp. 2d at 643. In this case, however, Brown's self-reporting was more reliable because the suicide risk stemmed from a suicidal statement and not from any recent act. Collins, 462 F.3d at 759-60. Brown's repeated assertion that he was not contemplating suicide suggests that defendants Hansen and Brown were not aware that Brown would seek to take his own life.

Plaintiffs' final argument rests on the seriousness of the charges against Brown, suggesting that whenever a person is charged with a heinous crime, jail officials must assume that the person poses a substantial risk of self-harm. To accept plaintiffs' argument "would mean most people in jail or prison were suicidal" and "would require the building of massive suicide watch wings at nearly every jail and prison." Taylor, 423 F. Supp. 2d at 893 (citing Jutzi-Johnson v. United States, 263 F.3d 753, 757 (7th Cir. 2001) (noting that incarceration

12

places prisoners under considerable psychological strain but that does not make suicide forgone conclusion for every prisoner).

Even when all reasonable inferences are drawn in favor of plaintiffs, at most the facts in this case would support a conclusion that defendants Hansen and Lund were aware that Brown might pose *a* risk of harming himself; they do not amount to sufficient evidence to allow a reasonable jury to find that Brown posed a substantial risk of suicide and that defendants Hansen and Lund were aware of that risk.  Therefore, I will grant defendants' motion for summary judgment as to plaintiffs' claims against defendants Hansen and Lund in their individual capacities.

2.  <u>Defendant Rock County and defendants Meierdirk, Nolan, Hansen and Lund in their official capacities</u>

A lawsuit brought against individuals in their official capacities is treated as if the lawsuit were brought against the government entity for which they work.  <u>Gray v. Lacke</u>, 885 F.2d 399, 405 (7th Cir. 1989).  This makes plaintiffs' claims against defendants Meierdirk, Nolan, Hansen and Lund in their official capacities identical to plaintiffs' claim against Rock County.  In addressing the liability of a municipality such as Rock County, the case law makes it clear that "[a] municipality is not liable under § 1983 unless the deprivation of constitutional rights is caused by a municipal policy or custom."  <u>Kujawski v. Board of</u>

13

Commissioners of Bartholomew County, 183 F.3d 734, 737 (7th Cir. 1999) (citing Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978)). Additionally, a municipality cannot be held liable on "a municipal policy theory absent a finding that the individual [ ] officers are liable on the underlying substantive claim." Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir. 1997).

Plaintiffs contend that defendant Rock County's express jail suicide policy deprived Brown of a constitutional right because it allowed defendants Hansen and Lund to be deliberately indifferent to Brown's substantial risk of suicide. However, I have already determined that defendants Hansen and Lund were not deliberately indifferent because they were not aware that Brown posed a substantial risk of suicide. In light of that determination, defendant Rock County cannot be held liable for the policy that was being enforced. Defendants will be granted summary judgment on plaintiffs' official capacity claims and their claim against defendant Rock County.

### B. Plaintiffs' Remaining Claims Against Defendants

Plaintiffs Denise Brown, John Brown, Samantha Brown and Jacob Brown have derivative claims against defendants for their loss of association with Chris Brown. Defendants contend that summary judgment must be granted on those derivative claims as well because of the failure of plaintiffs' underlying claim regarding violation of Chris Brown's

14

constitutional rights. Because I have concluded that defendants did not violate Chris Brown's rights under the Constitution, his wife's and children's claims for loss of association must be dismissed. <u>Schaefer v. Goch</u>, 153 F.3d 793, 799 (7th Cir. 1998).

All that remains is plaintiffs' negligence claim, which is governed by state law. I decline to exercise supplemental jurisdiction over plaintiffs' state law negligence claim. The termination of the federal claims removes all claims over which I had original jurisdiction and leaves only a state negligence claim, under 28 U.S.C. § 1367(c)(3). In this circumstance, I may decline to exercise supplemental jurisdiction over the remaining claim. <u>Redwood v. Dobson</u>, 476 F.3d 462, 467 (7th Cir. 2007) ("A court that resolves all federal claims before trial normally should dismiss supplemental claims without prejudice."). Therefore, plaintiffs' negligence cause of action will be dismissed without prejudice so that plaintiffs may re-file the action in state court if they wish.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment (dkt. #17) filed by defendants Jennifer Meierdirk, Shawn Nolan, Wayne Hansen, Josh Lund and Rock County is GRANTED in part with respect to all of plaintiffs' federal constitutional claims against defendants and DENIED in part with respect to plaintiffs' state common law negligence claim.

15

2. The state common law negligence claim asserted by plaintiffs Estate of Chris Brown, Denise Brown, John Brown, Samantha Brown and Jacob Brown is DISMISSED WITHOUT PREJUDICE to permit the claim to be brought in state court if plaintiffs so choose.

3. The clerk of court is directed to enter judgment in favor of defendants Jennifer Meierdirk, Shawn Nolan, Wayne Hansen, Josh Lund and Rock County with respect to plaintiffs' federal constitutional claims and to dismiss plaintiffs' state common law negligence claims without prejudice.

Entered this 11th day of June, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge